Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| EILEEN MARIE RIVERA AMADOR<br><br>Parte Recurrida<br><br>v.<br><br>MILTON EDGARDO IRIZARRY QUIÑONES Y OTROS<br><br>Parte Peticionaria | TA2025CE00455 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2024CV07220<br><br>Sobre:<br>Liquidación de Comunidad de Bienes |

Panel integrado por su presidenta la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de septiembre de 2025.

Comparece el doctor Milton Edgardo Irizarry Quiñones (Dr. Irizarry Quiñones) mediante el recurso de *certiorari* de epígrafe y solicita que revoquemos la *Resolución Enmendada* emitida y notificada el 6 de agosto de 2025, por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan. Mediante ésta, entre los asuntos resueltos, el foro primario declaró *ha lugar* a la *Urgente Moción en Solicitud de Desembolso* presentada por su exesposa, la Lcda. Eileen Marie Rivera Amador (Lcda. Rivera Amador) y ordenó al Dr. Irizarry Quiñones a desembolsar del plan KEOGH la cantidad de $250,000.00 con cargo a la participación de aquella en la comunidad de bienes post ganancial.

Examinada la petición y los documentos adjuntos a la misma, y, de conformidad con la discreción que nos confiere la Regla 7(B)(5) de nuestro Reglamento[1], denegamos expedir el auto de *certiorari* sin trámite ulterior.

[1] Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, supra, pág. 15.

**I.**

El 5 de agosto de 2024, la Lcda. Rivera Amador instó una *Demanda*[2] sobre liquidación de la sociedad de bienes gananciales contra el Dr. Irizarry Quiñones. Indicó que, mediante la sentencia número SJ2023RF00051, emitida el 28 de febrero de 2024, el matrimonio compuesto por ambos había quedado roto y disuelto. Expuso que, durante la vigencia del matrimonio, asumieron obligaciones, adquirieron bienes muebles e inmuebles, vehículos, abrieron cuentas en entidades financieras e incorporaron al Departamento de Estado dos entidades bajo las cuales se brindan servicios de oftalmología y una óptica. Alegó que el Dr. Irizarry Quiñones tiene el control absoluto de todos los bienes, incluyendo ingresos en la ahora comunidad de bienes. Por lo tanto, solicitó al foro primario que se realice un inventario y avalúo de los bienes habidos en comunidad; y que se adjudiquen las participaciones y créditos que correspondan a cada comunero.

El 21 de octubre de 2024, el Dr. Irizarry Quiñones presentó su *Contestación a Demanda y Reconvención*[3], en la que reconoce la comunidad de bienes entre ellos y acepta la adquisición de bienes y deudas en común. Al igual que la demandante, reclamó la existencia de créditos a su favor.

Luego de varios trámites procesales, el 14 de febrero de 2025, la Lcda. Rivera Amador presentó una *Moción en Solicitud de Orden de Prohibición de Enajenar Bienes*.[4] Recalcó que entre ella y el Dr. Irizarry Quiñones existía una comunidad post ganancial. Indicó que las partes tenían la posesión y control exclusivo de aquellos bienes en los que cada cual figuraba como único titular. En virtud de lo anterior, solicitó que el foro primario emitiera una orden dirigida a

---

[2] Véase, expediente electrónico del caso SJ2024CV07220 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada 1.
[3] *Íd.,* Entrada 31.
[4] *Íd.,* Entrada 52.

ambas partes para que éstas se abstuvieran de disponer de los bienes muebles, inmuebles, créditos, acciones, y cualquier otro bien que le perteneciera a la sociedad y aparezcan a nombre de uno solo de ellos, entre otros remedios relacionados.

Acto seguido, el 21 de febrero de 2025, la Lcda. Rivera Amador presentó una *Urgente Moción en Solicitud de Desembolso.*[5] En ésta, indicó que el valor estimado del capital económico de la comunidad sobrepasa los seis millones de dólares y que ella no tenía acceso a los ingresos que éste genera. Así, la Lcda. Rivera Amador solicitó la coadministración de los bienes y que se ordenara al Dr. Irizarry Quiñones desembolsar a favor de aquella la cantidad de $250,000.00 del plan de retiro que está exclusivamente a nombre del médico, el cual, según alegó, pertenece a la comunidad de bienes post ganancial. En el escrito, la Lcda. Rivera Amador se comprometió a asumir la carga contributiva o penalidades atribuibles al desembolso.

El 21 de marzo de 2025, el Dr. Irizarry Quiñones presentó una *Correcta Oposición a "Urgente Moción en Solicitud de Desembolso" presentado por la demandante Rivera Amador.*[6] Adujo que la solicitud de desembolso era prematura, toda vez que aún no se había llevado a cabo un inventario y tasación de los bienes de la comunidad. Sostuvo que la Lcda. Rivera Amador ya ha recibido cuantiosos adelantos del patrimonio -detallados en el escrito- y que el adelanto solicitado - calificado como oneroso- podría generar un menoscabo del patrimonio sujeto a liquidación. La Lcda. Rivera Amador incoó una dúplica a la oposición presentada.[7]

El 30 de junio de 2025, el TPI llevó a cabo la vista sobre los remedios provisionales solicitados. Conforme surge de la *Minuta*[8], el

---

[5] *Íd.,* Entrada 59.
[6] *Íd.,* Entrada 73.
[7] *Íd.,* Entrada 91.
[8] *Íd.,* Entrada 160.

Dr. Irizarry Quiñones se allanó a solicitud de prohibición de enajenar bienes y a la petición de coadministración. También, las partes argumentaron sus posiciones en torno al desembolso de $250,000.00 solicitado por la Lcda. Rivera Amador.

El 8 de julio de 2025, el TPI emitió la determinación objeto de este recurso. Mediante el referido dictamen, y dada la anuencia del Dr. Irizarry Quiñones, acogió la solicitud de la Lcda. Rivera Amador sobre prohibición de enajenar y, al tenor, emitió las siguientes órdenes dirigidas a ambas partes:

> a. Se prohíbe todo acto de enajenación, venta, permuta de bienes adquiridos durante el matrimonio y que puedan aparecer a nombre de uno solo de ellos.
>
> b. Cada parte tendrá que informarle a la otra, en el plazo de 30 días, todo negocio que haya realizado con bienes muebles pertenecientes a la extinta sociedad de gananciales, desde el divorcio y hasta el presente. Deberá evidenciar los detalles de la transacción y el destino de los frutos obtenidos de tales transacciones.
>
> c. De cualquiera de las partes querer hacer algún negocio con bienes adquiridos durante el matrimonio tiene que, primero, consultarlo con la otra parte y tener el consentimiento escrito de la otra parte, con independencia de a nombre de quien esté el bien. De haber controversia, tendrán que acudir al Tribunal.
>
> d. Todo producto de venta de bien mueble o inmueble que las partes consientan su venta o enajenación, se dividirá en partes iguales, o se depositará en cuenta privada destinada para la comunidad de bienes o en el Tribunal; todo ello mediante el conceso de ambas partes.[9]

En cuanto a la petición de desembolso de la Lcda. Rivera Amador, el TPI, luego de evaluar la prueba desfilada en la vista, formuló las siguientes determinaciones de hechos:

> 1. Las partes del epígrafe contrajeron matrimonio el 26 diciembre de 2003. Durante el matrimonio la Sociedad Legal de Gananciales generó un caudal sustancial, al igual que deudas. El matrimonio quedó disuelto mediante Sentencia dictada el 28 de febrero de 2024.
>
> 2. Ambas partes acumularon un cuantioso caudal consistente de más de una decena de vehículos de motor de considerable valor; propiedades inmuebles,

---

[9] *Íd.,* Entrada 136, págs. 1-2.

bienes muebles, prendas, un negocio de ventas de espejuelos y plan KEOGH, entre otros.

3. El demandado ha tenido desde el divorcio, bajo su control 10 de los 11 vehículos de motor y de los cuales ha vendido cuatro. Algunos de estos vehículos son dos Porche, un Caimán, un Ferrari, una Alfa Romeo y un Lamborghini. Todos los vehículos están a su nombre. La demandante tiene bajo su control un vehículo de motor, una Guagua Mercedes Benz GE que tiene un residual de aproximadamente $95,000.00 que vence en septiembre de 2025 y el cual se encuentra a la venta.

4. El demandado vendió una RAM TRX, un Porche 911 Carrera 4S en aproximadamente $145,000.00 con una ganancia de $39,216.25. Vendió un BMW y un Mercedes Benz GLE635 con pérdidas; y un Lamborghini, el cual vendió en aproximadamente $460,000.00 con una ganancia $231,564.42. Los demás vehículos se encuentran bajo su posesión.

5. Las partes acumularon sobre $900,000.00 en un plan KEOGH, cuya cuantía se ha mantenido similar desde el divorcio hasta el presente. Ese plan, a pesar de haberse creado con fondos gananciales sólo aparece a nombre del demandado. Posterior al divorcio, el demandado retiró de tal plan $150,000.00 para pagar deudas.

6. A pesar de que dicho plan KEOGH se creó con caudal de la extinta sociedad legal de gananciales, la demandante no tiene acceso al plan, a diferencia del demandado.

7. La demandante solicita se le desembolse del plan KEOGH, la cantidad de $250,000.00, como un adelanto a lo que eventualmente le pueda corresponder en la liquidación de la comunidad de bienes, ya que desde el divorcio entre las partes no recibe ingresos de lo que le corresponde en el negocio de la óptica, ni ha recibido dinero de la venta de vehículos de motor realizadas por el demandado.[10]

A tenor con las mismas, el TPI declaró *ha lugar* la solicitud de la Lcda. Rivera Amador para que se le desembolse del plan KEOGH la cantidad de $250,000.00 mientras se culmina el proceso de liquidación. El tribunal expresó que, según promovido por ella, la Lcda. Rivera Amador será la responsable de pagar las contribuciones y penalidades, si alguna, que el retiro de tal cantidad exija. Igualmente, estableció que el desembolso de $250,000.00 se hará con cargo a la participación de la Lcda. Rivera Amador en los

---

[10] *Íd.,* Entrada 136, págs. 2-3.

bienes de la comunidad. El foro aclaró que, si al hacerse la determinación final de la cuantía de dicha participación, la Lcda. Rivera Amador ha recibido una cantidad mayor a la que le corresponde, ésta tendrá que devolver el exceso que reciba de ese desembolso.

Por último, como remedio provisional, y mientras culmina el proceso de preparar el inventario y la liquidación de la comunidad de bienes, el TPI dictó una orden adicional dirigida a Select Wealth Advisors, LLC, registrada a través de Arkadios Wealth Advisors, LLC, para que ésta desembolsara a favor de la Lcda. Rivera Amador la suma de $250,000.00 de la cuenta identificada en la resolución, en un periodo no mayor de 5 días.

El 6 de agosto de 2025, el TPI emitió y notificó *Resolución Enmendada,* a los fines rectificar el destinatario de la orden adicional y dirigirla al Dr. Irizarry Quiñones, para que fuera él quien realizara las gestiones para desembolsar del plan KEOGH la suma de $250,000.00 a favor de la Lcda. Rivera Amador.[11]

El 21 de agosto de 2025, el Dr. Irizarry Quiñones presentó una solicitud de reconsideración en la que impugnó la orden de desembolso a favor de la Lcda. Rivera Amador.[12] Al día siguiente, el TPI declaró *no ha lugar* a la solicitud de reconsideración.[13] Ese día, 22 de agosto de 2025, el Dr. Irizarry Quiñones presentó una *Moción en Cumplimiento con la Resolución Enmendada en torno al Pago de la demandante Rivera y Haciendo Reserva del Derecho a Recurrir al Tribunal de Apelaciones,* en la que informó que solicitó al plan KEOGH el desembolso ordenado que previamente había gestionado para que estuviera disponible y, tal como explica el título de su

---

[11] *Íd.,* Entrada 168
[12] *Íd.,* Entrada 179
[13] *Íd.,* Entrada 182.

moción, hizo reserva de su derecho a impugnar la decisión emitida por el TPI.[14]

No obstante, inconforme con lo resuelto, el 15 de septiembre de 2025, el Dr. Irizarry Quiñones acudió ante este Tribunal y señaló la comisión de los siguientes errores:

> PRIMER ERROR:
> Erró el Tribunal de Primera Instancia al dar por existente un supuesto negocio de óptica o venta de espejuelos como activo del caudal ganancial, sin que tal extremo constara oportunamente alegado en la demanda ni probado, y estando fuera del marco procesal aplicable.
>
> SEGUNDO ERROR:
> Erró el TPI al establecer unas determinaciones que constituyen enmiendas a las alegaciones (Demanda), sin que se cumpliera con lo requerido por las Reglas de Procedimiento Civil a esos efectos.
>
> TERCER ERROR:
> Erró el Tribunal de Primera Instancia al fundamentar su decisión en criterios jurídicos incorrectos, declarando prematuramente derechos gananciales en partes iguales y disponer una liquidación parcial del caudal ganancial sin inventario y sin prueba que lo sustente.
>
> CUARTO ERROR:
> Erró el TPI al establecer unas determinaciones y emitir unas órdenes que afectan el derecho propietario del demandado-recurrente, sin celebrar una vista en los méritos y sin permitir el desfile de prueba documental, testifical y pericial, a pesar de que estaba disponible, lo que constituye una crasa violación al debido proceso de ley garantizado mediante disposición constitucional.

El 17 de septiembre de 2025, el Dr. Irizarry Quiñones presentó una *Solicitud de Autorización para Someter como Parte del Apéndice la Transcripción de la Vista de 30 de junio de 2025 a tenor con la Regla 34(E)(2) del Reglamento del Tribunal de Apelaciones,* cuyo título explica por sí mismo su propósito. Mediante *Resolución* emitida el 18 de septiembre de 2025, este Tribunal autorizó al Dr. Irizarry Quiñones a incluir la transcripción de la vista del 30 de junio de 2025, como parte del apéndice de su recurso.

---

[14] *Íd.,* Entrada 184.

**II.**

**A.**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[15]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.[16] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la

---

[15] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

[16] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[17], se justifica nuestra intervención. Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[18]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[19] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

---

[17] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

[18] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).

[19] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

## B.

El Tribunal Supremo ha establecido que los foros revisores no interfieren con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[20] Además, se requiere que la intervención en esta etapa evite un perjuicio sustancial.[21]

La discreción judicial se define como "'una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión Justiciera'".[22] El ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad.[23] Así pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.[24]

El Tribunal Supremo ha expresado que un tribunal abusa de su discreción:

> [...] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[25]

---

[20] *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular,* supra, pág. 155.

[21] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

[22] *Rivera et al. v. Arcos Dorados et al.,* supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla,* 144 DPR 651, 657–658 (1997).

[23] *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 272 (2021); *Rivera y otros v. Bco. Popular,* supra.

[24] *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 435 (2013); *Bco. Popular de P.R. v. Mun. de Aguadilla,* supra, pág. 658.

[25] *SLG Zapata Rivera v. J.F. Montalvo,* supra, citando a *Pueblo v. Rivera Santiago,* 176 DPR 559, 580 (2009)).

**III.**

Mediante el recurso de epígrafe, el Dr. Irizarry Quiñones cuestiona una determinación interlocutoria relacionada exclusivamente al manejo del TPI en los asuntos pertinentes a la liquidación de una comunidad de bienes post ganancial pendiente ante su consideración.

Hemos evaluado la resolución cuestionada, el recurso y su apéndice -incluida la transcripción de la vista celebrada ante el TPI el 30 de junio de 2025- a la luz de las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra,* y la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.* Concluimos que no existe razón alguna conforme los criterios aludidos para intervenir con la determinación discrecional del TPI, por lo que nos abstenemos de intervenir con el dictamen recurrido.

En este caso, no podemos concluir que el TPI hubiese cometido un error de derecho, abusado de su discreción, o actuado de forma irrazonable al conceder el desembolso de los fondos en cuestión. Mucho menos, se justificó que estemos ante una situación en la que, al expedir el recurso de *certiorari,* se evitaría un fracaso de la justicia. Adviértase que de la resolución surge que el TPI le proveyó a las partes oportunidad de argumentar sus posturas y, como resultado de una vista, estuvo en posición de formular unas detalladas determinaciones de hecho sobre la base de las cuales ordenó el desembolso de los fondos con cargo a la participación de la Lcda. Rivera Amador en la eventual liquidación de los bienes gananciales acumulados por las partes. Las partes tendrán la oportunidad de presentar la prueba que estimen pertinente en apoyo de sus respectivas posturas en la continuación del trámite de la demanda para así colocar al TPI en posición de adjudicar finalmente la causa de acción.

En fin, ante la ausencia de justificación para intervenir con el dictamen recurrido, denegamos la expedición del auto de *certiorari.*

**IV.**

Por lo antes expuesto, denegamos la expedición del auto de *certiorari.*

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones